IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

YENDER CHIRINOS-PIRONA,

Petitioner,

vs.

MARKWAYNE MULLIN, In his Official Capacity as Secretary of the Department of Homeland Security; TODD BLANCHE, In his Official Capacity as United States Attorney General; DAREN MARGOLIN, In his official capacity as Director of Executive Office for Immigration Review; DAVID VENTRUELLA, in his official Capacity as Acting ICE Director; ROB JEFFREYS, In his Official Capacity as Director of Nebraska Department of Correctional Services; and ALLEN GILL, In his official capacity as Omaha Field Office ERO Director;

Respondents.

**8:26CV388**

**MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner Yender Chirinos-Pirona's petition for a writ of habeas corpus. (Filing No. 1). Chirinos-Pirona, a noncitizen detained by U.S. Immigration and Customs Enforcement, alleges his detention is unlawful. For the reasons set forth below, his petition will be granted in part, and the Court will order that he receive a bond hearing.

## BACKGROUND

Chirinos-Pirona is a native and citizen of Venezuela. (Filing No. 1 at 3). He entered the United States in August 2022 through the Eagle Pass, Texas port of entry. (Filing No. 16 at 3). "[I]mmediately" after Chirinos-Pirona crossed the border, he was "apprehended" by U.S.

Immigration and Customs Enforcement (ICE). (Filing No. 1 at 3). An immigration officer "paroled" him into the United States "as an asylee applicant . . . due to lack of detention space." (Filing No. 16 at 3); (Filing No. 1-1).

Chirinos-Pirona's parole expired in October 2022. (Filing No. 1 at 4). Shortly after that, he "self-reported" to the ICE field office in Omaha, Nebraska. (Filing No. 16 at 4). ICE issued him a Notice to Appear initiating removal proceedings against him. (Filing No. 1-2). But ICE again "released" him from custody, this time on an "Order of Recognizance." (Filing No. 16 at 4). Pursuant to "section 236 of the Immigration and Nationality Act [8 U.S.C. § 1226]," ICE had "determined that, pending a final administrative decision in [Chirinos-Pirona's] case, [he] will be . . . [r]eleased . . . [o]n [his] own recognizance." (Filing No. 16-4).

Around three years later, in June 2025, Chirinos-Pirona appeared for a hearing at the Omaha immigration court. (Filing No. 1 at 4). ICE sought dismissal of Chirinos-Pirona's case so it could pursue an expedited removal. (Filing No. 16 at 4). The immigration judge granted ICE's motion to dismiss, but Chirinos-Pirona reserved appeal of that decision. (Filing No. 16 at 4). ICE nevertheless arrested Chirinos-Pirona after the hearing and issued a "Notice and Order of Expedited Removal" the same day. (Filing No. 16 at 4); (Filing No. 16-2). Chirinos-Pirona appealed the immigration judge's order of dismissal one month later. (Filing No. 16 at 4). That appeal is pending. (Filing No. 1 at 4).

Chirinos-Pirona sought release from detention on bond in October 2025. (Filing No. 1 at 4). The immigration judge denied his request, reasoning she lacked jurisdiction to consider it under *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). (Filing No. 1 at 4). As a result, Chirinos-Pirona remains detained at the McCook Detention Center in McCook, Nebraska. (Filing No. 1 at 2).

In response, Chirinos-Pirona petitioned for habeas relief. (Filing No. 1). He alleges his detention without an opportunity to be heard as to why he should be released on bond is unlawful. (Filing No. 1 at 10-12). He seeks immediate release, or in the alternative, a bond hearing. (Filing No. 1 at 13).

The Court directed Chirinos-Pirona to serve his petition on Respondents (Filing No. 4) and ordered Respondents to file a return on the petition within three business days of service to show

cause why the petition should not be granted. The Respondents did so (Filing No. 14); (Filing No. 18) and Chirinos-Pirona replied (Filing No. 20). The parties advised the Court that a hearing is not necessary. Therefore, and given the solely legal nature of the issues raised here, the Court considers the matter submitted on the parties' written arguments. *See* 28 U.S.C. § 2243.

## STANDARD OF REVIEW

"Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). The Constitution guarantees that the writ of habeas corpus is available to every individual detained within the United States. *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. Art. I, § 9, cl. 2). The Court's jurisdiction to hear habeas challenges extends to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Under 28 U.S.C. § 2241, a district court can grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Chirinos-Pirona bears the burden to show his custody is unlawful. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## DISCUSSION

The Court finds Chirinos-Pirona has carried that burden here. Relying on *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), the Federal Respondents[1] argue Chirinos-Pirona is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). (Filing No. 14 at 6). In their view, the "analysis is simple here" because Chirinos-Pirona is an "applicant for admission" who is "seeking admission" and is not "clearly and beyond a doubt entitled to be admitted[.]" (Filing No. 14 at 6); § 1225(b)(2)(A).

But this case is unlike *Avila* in an important way. *Avila* involved a noncitizen who entered the country "without inspection or admission." 170 F.4th at 1132. Here, by contrast, Chirinos-Pirona was stopped at the border, released, re-detained, and then released *again* on an order of recognizance under 8 U.S.C. § 1226(a)(2)(B). (Filing No. 16-4). This case, then, "raises other

[1] The Federal Respondents are all but Rob Jeffreys, Director of the Nebraska Department of Correctional Services. Director Jeffreys takes no position "on the substantive issues raised in the Petition" nor "whether [Chirinos-Pirona]'s writ should or should not be granted." (Filing No. 18 at 2).

issues of law and fact" from those in *Avila*. *Silva v. Warden, Lincoln Cnty. Det. Ctr.*, 2026 WL 926725, at *1 (D. Neb. Apr. 6, 2026).

Nothing in *Avila* permits the government to effectively recategorize scores of immigrants who, like Chirinos-Pirona, were conditionally paroled[2] under § 1226(a)(2)(B). *Id.* Nor does the Fifth Amendment.

The Due Process Clause prohibits the government from depriving any person "of life, liberty, or property, without due process of law." U.S. Const. amend. V. It applies to all "'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 694 (2001). Procedural due process claims "are examined under a two-part test: 'whether there exists a liberty or property interest which has been interfered with by the government'; and 'whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Cent. Specialties, Inc. v. Large*, 482 F. Supp. 3d 886, 895 (D. Minn. 2020), *aff'd*, 18 F.4th 989 (8th Cir. 2021) (quoting *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

In the immigration context, however, "the nature of [due process] protection may vary depending upon [immigration] status and circumstance." *Id.* Noncitizens are entitled to due process "in the context of removal proceedings." *Trump v. J. G. G.,* 604 U.S. 670, 673 (2025) (citing *Reno v. Flores*, 507 U.S. 292, 306, (1993)). But because "Congress may make rules as to aliens that would be unacceptable if applied to citizens," the government "has more flexibility when dealing with immigration." *Banyee v. Garland*, 115 F.4th 928, 931 (8th Cir. 2024) (quoting *Demore v. Kim*, 538 U.S. 510, 526 (2003)).

Here, even allowing the government the flexibility it is entitled to in this area, the Court concludes that Chirinos-Pirona did not receive the process he was due. To start, he had a liberty interest in his continued release on his own recognizance. To determine whether a conditional release creates a protected liberty interest, at least one circuit has "resolved the issue 'by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*.'" *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010)

---

[2] "It is apparent that the . . . phrase 'release on recognizance' [is] another name for 'conditional parole' under § 1226(a)." *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115.

(citation omitted). In *Morrissey v. Brewer*, the Supreme Court found that parolees enjoy several "of the core values of unqualified liberty" and build their lives upon "at least an implicit promise that parole will be revoked only if [they] fail[ ] to live up to the parole conditions." 408 U.S. 471, 482 (1972). Given the "grievous loss" caused by revocation of parole, the court held that those released on criminal parole were entitled to due process before having their parole revoked. *Id.*

The Court finds that approach sound. A noncitizen conditionally paroled into the United States, like Chirinos-Pirona, is analogous to a criminal parolee. *Silva,* 2026 WL 926725, at *6. The liberty of a parolee "includes many of the core values of unqualified liberty" and its revocation inflicts the same "grievous loss on the parolee and often on others." *Id.* (citing *Morrissey,* 408 U.S. at 482). The government made Chirinos-Pirona the same "implicit promise" that his liberty would "be revoked only if [he] fail[ed] to live up to the conditions of release" imposed by his order of his release on recognizance. *Morrissey,* 408 U.S. at 482; *see also Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) (holding that [j]ust as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen] have a liberty interest in remaining out of custody on bond."). Thus, as a § 1226(a)(2)(B) conditional parolee, Chirinos-Pirona has a liberty interest that "at the very least, entitles him to the procedures authorized by Congress." *Singh v. Noem*, 2026 WL 766228, at *6 (D.N.M. Mar. 18, 2026).

But because the Federal Respondents assert Chirinos-Pirona is now subject to mandatory detention under § 1225(b)(2)(A), he has not received those procedures, including the chance to request a bond redetermination before an immigration judge. *See Jennings v. Rodriguez*, 583 U.S. 281, 305 (2018) (noting that "the Attorney General 'may release' [a noncitizen] on 'bond . . . or conditional parole' under § 1226(a) and that "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention."); 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1). The assertion that § 1225(b)(2)(A) now applies to Chirinos-Pirona is, in the Court's view, incorrect. Chirinos-Pirona "was granted conditional parole under § 1226" when ICE again released him from detention in 2022," so the revocation of his parole is likewise "governed by that statute." *Silva*, 2026 WL 926725, at *2. The Court is not required to "accept" the government's "post hoc rationalization[ ]" as to why Chirinos-Pirona should be subject to mandatory detention under § 1225(b)(2)(A) now—"an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463

U.S. 29, 50 (1983).[3] "Put simply, the government is not allowed to change horses midstream. It is stuck with the horse on which it rode into court," which, here, is 8 U.S.C. § 1226. *Souleimane C. v. Blanche*, 2026 WL 1180075, at *3 (D. Minn. Apr. 30, 2026). After all, Chirinos-Pirona's order of recognizance expressly says that pursuant to *§ 1226*, Chirinos-Pirona was to "be . . . *[r]eleased* . . . [o]n [his] own recognizance" "pending a final administrative decision in [his] case." (Filing No. 16-4) (emphasis added). "[D]etaining [a noncitizen] on conditional parole [like Chirinos-Pirona] without providing a post-deprivation opportunity to challenge his detention offends the Fifth Amendment and due process." *Ixquiactap-Ajpacaja v. Mullin*, 2026 WL 1295702, at *1 (D. Neb. May 12, 2026).

Of note, the Federal Respondents do not argue that the dismissal of Chirinos-Pirona's immigration proceedings somehow terminated the order of recognizance. Nor could they. Chirinos-Pirona's appeal prevented the proceedings—and any removal orders—from becoming administratively final. *See* 8 C.F.R. § 1241.1(a). Put differently, when Chirinos-Pirona walked into immigration court in June 2025, he was released on recognizance pursuant to § 1226. Nothing that happened at or after the hearing changed that, given he reserved—and then perfected—an appeal, which remains pending.

Having found that Chirinos-Pirona's detention is governed by 8 U.S.C. § 1226(a), "the next question is one of remedy."[4] *Souleimane C.,* 2026 WL 1180075, at *4. Noncitizens detained under 8 U.S.C. § 1226(a) are entitled to a bond hearing. *See Jennings,* 583 U.S. at 305; 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1). Chirinos-Pirona, of course, has not received one. "Depriving [Chirinos-Pirona] of his right to a bond hearing—a protection to which federal regulations plainly entitle him—strikes at the heart of his due process right to be free of arbitrary detention." *Souleimane C.,*

---

[3] Although this principle is ordinarily applied in cases arising under the Administrative Procedure Act, courts have also applied this principle when reviewing agency action for due process violations under the Fifth Amendment. *See Padara Cruz v. Noem*, 2026 WL 555038, at *3 (E.D.N.Y. Feb. 27, 2026) (collecting cases); *cf. Yellowbear v. Lampert*, 741 F.3d 48, 58 (10th Cir. 2014) (Gorsuch, J.) (citation omitted) (explaining that "factually unsupported 'post-hoc rationalizations' aren't the stuff of summary judgment victories in [Religious Land Use and Institutionalized Persons Act] cases (or in most any other)").

[4] Given the Court's finding that Chirinos-Pirona is entitled to habeas relief on procedural due process grounds, it need not reach the other claims raised in his petition.

2026 WL 1180075, at *4 (citing *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). Accordingly, to remedy the unlawful aspect of Chirinos-Pirona's detention, the Court will order the Federal Respondents to provide him with a bond hearing within seven days of this Order.

Accordingly,

**IT IS ORDERED:**

1. Petitioner Yender Chirinos-Pirona's petition for a writ of habeas corpus (Filing No. 1) is granted in part and denied in part, as set forth above.
2. The Federal Respondents shall provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) and the corresponding regulations on or before August 28, 2026.
3. If the Federal Respondents do not provide Petitioner with a bond hearing as required, Petitioner must be immediately released from detention.
4. On or before September 4, 2026, the Federal Respondents shall provide the Court with a status update regarding the bond hearing or, if no bond hearing was held, advise the Court regarding Petitioner's release.
5. A separate judgment will be entered.

Dated this 21st day of August, 2026.

BY THE COURT:



Susan M. Bazis
United States District Judge